53 Cal.Rptr.3d 173 (2007)
146 Cal.App.4th 674
Richard A. SCHATZ, Plaintiff and Respondent,
v.
ALLEN MATKINS LECK GAMBLE & MALLORY LLP, Defendant and Appellant.
No. D047347.
Court of Appeal of California, Fourth District, Division One.
January 9, 2007.
*174 Rogers Joseph O'Donnell & Phillips, Sean M. SeLegue and Zachary M. Radford, San Francisco, for Defendant and Appellant.
Joseph L. Schatz, for Plaintiff and Respondent.
McCONNELL, P.J.
This case involves an attorney fees dispute. In Alternative Systems, Inc. v. Carey (1998) 67 Cal.App.4th 1034, 79 Cal. Rptr.2d 567 (Alternative Systems), the court held the mandatory fee arbitration act (MFAA; Bus. & Prof.Code[1] § 6200 et seq.), which for public policy reasons entitles clients to nonbinding arbitration and trial de novo, supersedes a retainer agreement's binding arbitration clause when the client opts for the MFAA procedure. Under the MFAA, a client may commit to binding arbitration only after a fee dispute arises. (Alternative Systems, supra, at pp. 1042-1044, 79 Cal.Rptr.2d 567.)
The issue here is whether Alternative Systems remains good law in light of the Supreme Court's opinion in Aguilar v. Lerner (2004) 32 Cal.4th 974, 12 Cal. Rptr.3d 287, 88 P.3d 24 (Aguilar). In a concurring opinion in Aguilar, Justice Chin submitted that the majority opinion effectively overruled Alternative Systems. (Aguilar, supra, at pp. 992-993, 12 Cal. Rptr.3d 287, 88 P.3d 24 (con. opn. of Chin, J.).) Justice Chin concluded the MFAA complements, rather than supersedes the California Arbitration Act (CAA), and after nonbinding arbitration under the MFAA there is no right to trial de novo if the parties had a preexisting agreement for binding arbitration. In that instance, a second arbitration resolves the matter. (Id. at pp. 990-991, 12 Cal.Rptr.3d 287, 88 P.3d 24.)
We respectfully disagree with Justice Chin's analysis and conclude Aguilar did not impliedly overrule Alternative Systems, and it was correctly decided. We affirm the order denying the motion of defendant Allen Matkins Leek Gamble & Mallory (Allen Matkins) to compel binding arbitration following nonbinding arbitration under the MFAA and plaintiff Richard A. Schatz, M.D.'s, request for trial de novo.

*175 FACTUAL AND PROCEDURAL BACKGROUND
In a February 1999 agreement Dr. Schatz retained Allen Matkins to represent him in a dispute with a Dr. and Mrs. Palmaz concerning the assignment of income from a partnership. The agreement stated it would also pertain to "any additional matters we handle on your behalf or at your direction." The agreement contained an arbitration section, which provided: "If you do not agree to arbitrate disputes with us, simply line out this section. Arbitration is not a precondition to us representing you. By signing this letter without deleting this section, you agree that, in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed (including but not limited to disputes regarding attorneys' fees or costs ...), such dispute shall be resolved by submission to binding arbitration in San Diego County, California, before a retired judge or justice..." Dr. Schatz signed the agreement without lining out the arbitration section.
In February 2000, without entering into another agreement, Dr. Schatz retained Allen Matkins to represent him in an easement dispute with a different party or parties affecting the rear access road to his Rancho Santa Fe home. Dr. Schatz paid Allen Matkins $179,088.69 in fees and costs incurred in the matter, but approximately two months before trial he stopped making payments. Allen Matkins proceeded to trial despite nonpayment, and in an April 2003 letter to Dr. Schatz, it demanded $169,917.42 in outstanding fees and costs so "arbitration will not be necessary."
Dr. Schatz did not respond, and Allen Matkins apparently did nothing for some time. In a January 2004 letter to him, Allen Matkins invoked the arbitration clause of the agreement in the Palmaz matter. In a written response, Dr. Schatz asserted his fee dispute concerned undisclosed conflicts of interest in the easement matter. Dr. Schatz claimed the agreement's arbitration provision was inapplicable because it did not refer to the easement litigation and its reference to additional matters was not highlighted or otherwise emphasized. Alternatively, Dr. Schatz claimed the arbitration provision was illegal under Alternative Systems, supra, 67 Cal.App.4th 1034, 79 Cal.Rptr.2d 567. Dr. Schatz advised he wished to exercise his "statutory rights to nonbinding fee arbitration, and, if he so elects, trial de novo before a jury."
Allen Matkins advised Dr. Schatz it believed the arbitration provision was applicable, but it agreed to nonbinding arbitration under the MFAA through the San Diego County Bar Association (Bar Association). Allen Matkins provided Dr. Schatz with an application for the arbitration along with rules and instructions on the procedure. Allen Matkins requested that Dr. Schatz notify it within 10 days if he elected nonbinding arbitration.
At Dr. Schatz's insistence, Allen Matkins then provided him with a statutory "Notice of Client's Right to Arbitration." The notice provides a client has 30 days from the date of its receipt to apply for arbitration.
The matter was arbitrated in April 2005 through the Bar Association, and the following month the arbitrators ruled in favor of Allen Matkins. Dr. Schatz then filed a complaint seeking a trial de novo, declaratory relief and refund of attorney fees. In response, Allen Matkins petitioned to compel binding arbitration under the preexisting agreement. In his opposition, Dr. Schatz argued Alternative Systems invalidates the binding arbitration provision, and in reply, Allen Matkins argued that in Aguilar the Supreme Court impliedly abrogated the holding in Alternative Systems, *176 and binding contractual arbitration would satisfy the MFAA's de novo trial requirement. The court agreed with Dr. Schatz and denied the petition to compel arbitration.

DISCUSSION

I

Overview of Arbitration Proceedings
In standard arbitration under the CAA, both parties must agree to arbitrate. (Benasra v. Marciano (2001) 92 Cal.App.4th 987, 990,112 Cal.Rptr.2d 358.) "The CAA `represents a comprehensive statutory scheme regulating private arbitration in this state. [Citation.] Through this detailed statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution."' [Citation.] `The statutes set forth procedures for the enforcement of agreements to arbitrate [citations], establish rules for the conduct of arbitration proceedings except as the parties otherwise agree [citations], describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced [citations], and specify where, when, and how court proceedings relating to arbitration matters shall occur [citations].'" (Aguilar, supra, 32 Cal.4th at p. 983, 12 Cal.Rptr.3d 287, 88 P.3d 24.)
"In contrast to the CAA, which is governed by the Code of Civil Procedure, the MFAA has its own rules and limitations, as set forth in the Business and Professions Code." (Aguilar, supra, 32 Cal.4th at p. 984, 12 Cal.Rptr.3d 287, 88 P.3d 24.) Under the MFAA, the Board of Governors of the California State Bar is required to adopt rules for the arbitration of attorney fees disputes through the sponsorship of local bar associations. (§ 6200, subds.(a), (d).) Arbitrators in such proceedings may take and hear evidence, administer oaths and compel the attendance of witnesses and the production of documents. (§ 6200, subd. (g).)
The MFAA is consumer-oriented legislation based on public policy. Through the measure, the Legislature intended "to alleviate the disparity in bargaining power in attorney fee matters which favors the attorney by providing an effective, inexpensive remedy to a client which does not necessitate the hiring of a second attorney." (Manatt, Phelps, Rothenberg & Tunney v. Lawrence (1984) 151 Cal.App.3d 1165, 1174, 199 Cal.Rptr. 246; Corell v. Law Firm of Fox and Fox (2005) 129 Cal.App.4th 531, 537, 28 Cal.Rptr.3d 310 ["MFAA arbitration subserves a legislative and public purpose to apply the relatively informal and inexpensive arbitral process to a class of disputes whose nature merits such facility"].)
Under the MFAA, the obligation to arbitrate arises from statutory mandate rather than the parties' agreement. The MFAA favors the client by making arbitration voluntary for the client, but mandatory for the attorney on the client's request. (§ 6200, subd. (c).) The voluntary aspect is inapplicable, however, when the client agrees in writing to arbitration under the MFAA. (Ibid.) "Moreover, the MFA[A] affords the client double protection, with a right to trial after arbitration." (Alternative Systems, supra, 67 Cal.App.4th at p. 1042, 79 Cal.Rptr.2d 567.) Under the MFAA, the parties may commit in writing to binding arbitration, but only after the attorney fees dispute arises. (§ 6204, subd. (a).)
Further, the MFAA provides the client with certain procedural safeguards. Before or when an attorney serves a summons in an action against the clientor "any other proceeding" to resolve a fee *177 disputethe attorney must give the client written notice of the right to nonbinding arbitration under the MFAA. (§ 6201, subd. (a).) The failure to give the notice is deemed so egregious it is a ground for dismissal of the action or other proceeding. (Ibid.) A client entitled to nonbinding arbitration under the MFAA may obtain a stay of a court action or any other proceeding for attorney fees by, before answering, filing a request for nonbinding arbitration. (§ 6201, subd. (b).)

II

Alternative Systems and Aguilar Opinions

A
In Alternative Systems, supra, 67 Cal. App.4th 1034, 79 Cal.Rptr.2d 567, the parties entered into a fee contract that required binding arbitration of any fee dispute by the American Arbitration Association (AAA) in accordance with its rules and procedures. A fee dispute arose and the attorney demanded binding arbitration before the AAA. The client countered with a demand for nonbinding arbitration under the MFAA and pressed the attorney to direct the AAA to dismiss the pending arbitration. The AAA responded that it intended to proceed with the arbitration absent a contrary court order or agreement of the parties. (Id, at pp. 1037-1038, 79 Cal.Rptr.2d 567.)
The matter first went to nonbinding arbitration, after which the attorney sought trial de novo in federal court. The client moved for dismissal for lack of subject matter jurisdiction and the attorney voluntarily dismissed. The client sought trial de novo in state court and a stay of the AAA proceedings, arguing AAA arbitration was preempted by its election to proceed under the MFAA. In the meantime, the AAA arbitration was held and the client's counsel appeared specially to contest the AAA's jurisdiction. The arbitrator rendered an award in favor of the attorney and he successfully moved the court to confirm the award. (Id. at pp. 1038-1039, 79 Cal.Rptr.2d 567.) The client appealed the order confirming the award. (Id at p. 1037, 79 Cal.Rptr.2d 567.)
The Court of Appeal reversed the order on the ground the AAA arbitrator exceeded his powers because the MFAA preempted the AAA arbitration clause in the fee agreement. (Alternative Systems, supra, 67 Cal.App.4th at pp. 1037,1044, 79 Cal.Rptr.2d 567.) The court noted the Legislature amended the MFAA in 1996, effective January 1, 1997, to strengthen client protections "so that the provisions for notice, dismissal and stays now likewise apply to any other proceeding initiated by an attorney to resolve a fee dispute." (Alternative Systems, supra, at p. 1042, 79 Cal.Rptr.2d 567.) The court reasoned that "[w]ith the 1996 amendments the Legislature made it clear that prospective waivers of trial after arbitration are not allowed." (Ibid.) Again, under section 6204, subdivision (a), the parties may only agree to be bound by arbitration after a fee dispute arises. Moreover, when a client invokes the MFAA, any binding arbitration "is the arbitration conducted by the local bar association under the MFA[A], not some other private alternative dispute resolution provided by another forum." (Alternative Systems, supra, at pp. 1042-1043, 79 Cal. Rptr.2d 567.)[2]

*178 B

1
Allen Matkins contends that because of Justice Chin's concurring opinion in Aguilar, supra, 32 Cal.4th 974, 12 Cal. Rptr.3d 287, 88 P.3d 24, "California case law is presently in a state of confusion over the interaction of the MFAA with private arbitration clauses in attorney-client engagement agreements."[3] Allen Matkins submits we should reject Alternative Systems and follow Justice Chin's analysis, predicting that otherwise clients will be motivated to invoke the MFAA merely as a means to repudiate private arbitration agreements and thwart the Legislative intent of promoting arbitration generally.
The majority opinion in Aguilar does not address the substantive issue in Alternative Systems, whether a binding arbitration provision in a retainer agreement violates a client's rights under the MFAA to trial de novo after nonbinding arbitration of an attorney fees dispute. Rather, the court held the client waived, his statutory rights under the MFAA by filing suit for malpractice. At the relevant time, section 6201, subdivision (d) provided: "`A client's right to request or maintain arbitration under the provisions of this article is waived by ... (2) seeking affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct.' (Stats.1993, ch. 1262, § 2, p. 7333, italics added.)"[4] (Aguilar, supra, 32 Cal.4th at p. 987, 12 Cal.Rptr.3d 287, 88 P.3d 24.)
The concurring opinion of a Supreme Court justice is, of course, nonbinding dicta. (Rosato v. Superior Court (1975) 51 Cal.App.3d 190, 211, 124 Cal. Rptr. 427.) Supreme Court dicta may be highly persuasive, but we are not persuaded by Justice Chin's conclusions the majority opinion in Aguilar overrules Alternative Systems and the latter opinion is faulty.
As to the first point, Justice Chin wrote that "Alternative Systems ... cannot survive today's ruling. We are holding today that a client who does not request nonbinding arbitration has waived the MFAA's protections, and the binding arbitration agreement is enforceable. If Alternative Systems were to remain valid, that would mean that a client who agreed to binding arbitration could evade that agreement simply by requesting nonbinding arbitration. The lesson future clients who had agreed to binding arbitration would learn from this case is that if they want to evade their agreement, they must demand nonbinding arbitration whether or not they otherwise want it. Future clients who wish to sue in court despite an arbitration agreement will be forced to go to nonbinding arbitration before they could do so. This situation would be unfortunate for two reasons. First, it would permit a client to evade an arbitration agreement *179 by a simple procedural device, contrary to the letter and intent of the CAA. Second, it would require, as a prerequisite to evading the arbitration agreement, that the client pursue nonbinding arbitration. This would result in many sham nonbinding arbitrations that neither party wanted or intended to accept." (Aguilar, supra, 32 Cal.4th at pp. 992-993,12 Cal.Rptr.3d 287, 88 P.3d 24 (con. opn. of Chin, J.).)
We agree that Aguilar shows the MFAA does not per se preclude prospective binding arbitration agreements. As was the case in Aguilar a client may waive nonbinding arbitration by failing to follow MFAA procedures, or a client may opt for binding arbitration under a retainer agreement rather than nonbinding arbitration under the MFAA and perhaps a trial de novo. After all, binding arbitration ordinarily resolves the matter during one proceeding, an attractive proposition for reasons of cost and expediency. If a client does not choose MFAA arbitration or properly invoke it, there is no reason to invalidate the parties' agreement for resolution through binding arbitration. We do not read Aguilar, however, as impliedly holding that prospective agreements for binding arbitration must always be honored for public policy reasons. We note that in a concurring opinion in Aguilar, Justice Moreno stated "I do not understand the majority opinion to be deciding whether post-1996 predispute CAA agreements to arbitrate legal fees may be enforced, consistent with the MFAA, without the client's consent." (Aguilar, supra, 32 Cal.4th at p. 994, 12 Cal.Rptr.3d 287, 88 P.3d 24 (con. opn. of Moreno, J.).) Again, Aguilar decided only the waiver issue, it did not reach the merits of Alternative Systems. Accordingly, we conclude Alternative Systems remains good law.

2
Historically, the MFAA required an attorney to notify a client before or at the commencement of "an action" of the client's rights to nonbinding arbitration and trial de novo. (Former § 6201, subd. (a), added by Stats.1978, ch. 719, § 1, p. 2249.) In concluding the Alternative Systems court erred in its analysis, Justice Chin relied on the 1996 amendments to the MFAA, effective January 1, 1997, that extend an attorney's duty of notification to "any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article." (§ 6201, subd. (a), as amended by Stats.1996, ch. 1104, § 13, italics added.) Justice Chin reasoned the italicized language shows "the parties may agree to some proceeding to resolve the controversy other than a judicial action, such as binding arbitration under the CAA." (Aguilar, supra, 32 Cal.4th at p. 991, 12 Cal.Rptr.3d 287, 88 P.3d 24 (con. opn. of Chin, J.).)
Justice Chin also relied on subdivisions (b) and (c) of section 6201, as amended, which pertain to stays. Subdivision (b) provides, "If an attorney ... commences an action in any court or any other proceeding and the client is entitled to maintain arbitration under this article, and the dispute is not one to which subdivision (b) of Section 6200 applies, the client may stay the action or other proceeding by serving and filing a request for arbitration ..." (§ 6201, subd. (b), italics added.) Subdivision (c) provides, "Upon filing and service of the request for arbitration, the action or other proceeding shall be automatically stayed until the award of the arbitrators is issued or the arbitration is otherwise terminated." (§ 6201, subd. (c), italics added.) In Justice Chin's view, this "means that if the client requests nonbinding arbitration under the MFAA, the judicial action or other proceeding is stayed, but only until the nonbinding arbitration is finished. The other proceeding is merely stayed pending the nonbinding arbitration, not *180 dismissed permanently." (Aguilar, supra, 32 Cal.4th at p. 991,12 Cal.Rptr.3d 287, 88 P.3d 24 (con. opn. of Chin, J.).)
Justice Chin found the language of sections 6201 and 6204 somewhat ambiguous. He noted that subdivision (c) of section 6201 goes on to provide the "stay may be vacated in whole or in part, after a hearing duly noticed by any party or the court, if and to the extent the court finds that the matter is not appropriate for arbitration under the provisions of this article. The action or other proceeding may thereafter proceed subject to the provisions of Section 6201" (Italics added.) Under section 6204, subdivision (a), the "parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen. In the absence of such an agreement, either party shall be entitled to a trial after arbitration if sought within 3(1 days, pursuant to subdivisions (b) and (c)" (Italics added.) Subdivision (c) of section 6204 provides, "If no action, is pending, the trial after arbitration shall be initiated by the commencement of an action in the court having jurisdiction over the amount of money in controversy within 30 days after mailing of notice of the award. After the filing of such an action, the action shall proceed in accordance with" Code of Civil Procedure statutes pertaining to civil actions generally. (Italics added.)
In Alternative Systems, the court rejected the notion that an AAA arbitration would suffice as a "trial after arbitration" within the meaning of section 6204. (Alternative Systems, supra, 67 Cal.App.4th 1034, 1042, fn. 5, 79 Cal.Rptr.2d 567.) Justice Chin disagreed that the references to a trial and court action in section 6204 require a trial after nonbinding arbitration under the MFAA, as under principles of statutory construction sections 6201 and 6204 must be read together and harmonized. Justice Chin concluded that "to give effect to section 6201, section 6204 must be construed as merely providing the procedure to follow if the nonbinding arbitration is followed by a judicial action, not as prohibiting the parties from agreeing to some other proceeding. The latter interpretation would make meaningless section 6201's acknowledgement that the parties may agree to some form of dispute resolution other than judicial action, and its repeated references to some proceeding other than a court action." (Aguilar, supra, 32 Cal.4th at p. 992,12 Cal.Rptr.3d 287, 88 P.3d 24 (con. opn. of Chin, J.).)
We review issues of statutory construction independently. (Rodriguez v. American Technologies, Inc. (2006) 136 Cal. App.4th 1110, 1116, 39 Cal.Rptr.3d 437.) "A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. [Citation.] In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. [Citation.] Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished." (Home Depot, U.S.A, Inc. v. Contractors' State License Bd. (1996) 41 Cal.App.4th 1592, 1600-1601, 49 Cal.Rptr.2d 302.) "Faced with ambiguous statutory language, we endeavor to find the interpretation that will best further the statutory purposes. [Citation.] `[T]he court must consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than defeat the statute's purpose and policy.'" (Escobedo v. Estate of Snider (1997) 14 Cal.4th 1214, 1223, 60 Cal.Rptr.2d 722, 930 P.2d 979.)
To any extent the MFAA statutes are ambiguous, as Justice Chin found, the legislative *181 history shows the MFAA is consumer-oriented legislation intended to protect clients. Senate Bill No. 1351, under which the MFAA was enacted, was sponsored by the State Bar of California. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1351 (1977-1978 Reg. Sess.) as amended Feb. 13,1978, p. 1.) "The purpose of the bill is to create an orderly system of arbitration of attorneys' fee disputes." (Ibid.)
In an April 1976 letter, which is included in the materials of the Senate Committee on Judiciary, the State Bar's Special Committee on Resolution of Attorney Fee Disputes (Committee) reported the following finding to the State Bar's Board of Governors: "Attorneys hold a considerable bargaining advantage over the vast majority of clientsthose who infrequently consult lawyers, are inexperienced in fee standards and are reluctant to bargain with the attorney whose counsel they seek." (Com. Chairman Frank E. Farella, letter to Board of Governors, State Bar of California, Apr. 29, 1976, p. 5.) The Committee also found a "Bar-sponsored procedure to afford clients a hearing and an expeditious resolution of their complaints would aid considerably in restoring public confidence and respect for attorneys." (Id, at p. 6.)
The Senate Democratic Caucus noted the following argument in support of Senate Bill No. 1351: "Proponents contend that this bill will create an orderly system of arbitration of attorney's fee disputes, that it will assist in keeping malpractice rates from rising, and that it will instill trust by the public in attorneys by providing a means for resolving fee disputes." (Sen. Democratic Caucus, Analysis of Sen. Bill No. 1351 (1977-1978 Reg. Sess.) as amended Mar. 7, 1978.)
Given the Legislature's intent, we resolve any tension between sections 6201 and 6204 in favor of upholding client protections under the MFAA. Under Justice Chin's analysis, section 6204's right to trial de novo is rendered meaningless for clients who signed retainer agreements with binding arbitration clauses before any fee dispute arose. Since the Legislature sought to rectify disparities in bargaining power between clients and attorneys that favor attorneys, and to foster clients' trust in the legal system, we do not believe it intended to deny the trial de novo protection to a large percentage of clients. In Aguilar, supra, 32 Cal.4th at page 985, 12 Cal. Rptr.3d 287, 88 P.3d 24, the court explained there had been a "proliferation of arbitration clauses in attorney retainer agreements during the last two decades."
In line with Alternative Systems, we conclude section 6204, as amended in 1996, gives clients the right to trial de novo after nonbinding arbitration under the MFAA even when they have signed prospective waivers of trial after arbitration. In such situations the MFAA trumps the CAA. "Any one may waive the advantage of a law intended solely for his [or her] benefit. But a law established for a public reason cannot be contravened by a private agreement." (Civ.Code, § 3513.) Notably, the Alternative Systems opinion was rendered in 1998, and the Legislature has not amended the MFAA in response to it.
The court correctly ruled Dr. Schatz is entitled to a trial de novo and is not bound by the binding arbitration provision of his retainer agreement with Allen Matkins.

DISPOSITION
The order is affirmed. Dr. Schatz is entitled to costs on appeal.
WE CONCUR: HUFFMAN and AARON, JJ.
NOTES
[1] All statutory references are to the Business and Professions Code unless otherwise specified.
[2] The court also relied on a formal advisory opinion of the Standing Committee on Professional Responsibility and Conduct of the State Bar (Standing Committee). The Standing Committee found "that an agreement between an attorney and client calling for binding arbitration of a fee dispute that was executed in advance of the fee dispute would be contrary to the intent and spirit of the MFA[A]. It was concerned that such an agreement `could be used as a precondition of employment and thus vitiate any probability of voluntary acquiescence.'" (Alternative Systems, supra, 67 Cal.App.4th at p. 1043, 79 Cal.Rptr.2d 567.)
[3] Justices Baxter and Brown joined Justice Chin in his concurring opinion. (Aguilar, supra, 32 Cal.4th at p. 993, 12 Cal.Rptr.3d 287, 88 P.3d 24 [con. opn. of Chin, J.].)
[4] "This provision exists in substantially the same form today, although it has been slightly reworded. The present version of section 6201, subdivision (d) provides: "A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading seeking either of the following: [¶] ... [¶] (2) Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct. (Stats.1996, ch. 1104, § 13.)" (Aguilar, supra, 32 Cal.4th at p. 987, fn. 4, 12 Cal.Rptr.3d 287, 88 P.3d 24.)